IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BILLIE J. SCHULL, et al., | CV-17-76-H-CCL |
| Plaintiffs, | |
| vs. | Opinion and Order |
| MARYLAND CASUALTY COMPANY, a Maryland Corp; and DOES A - Z, | |
| Defendants. | |

Defendant Maryland Casualty Company (Maryland Casualty or MCC), now known as Zurich American Insurance Company, successor by merger to Maryland Casualty as of December 31, 2015[1], has moved under Fed. R. Civ. Pro. 12(b)(6) to dismiss all but one of the claims[2] asserted against it in the Eighth Amended Complaint With More Definite Statement based on the statute of limitations.

---

[1] The Court will generally refer to Defendant as Maryland Casualty but may use the acronym MCC when quoting from orders entered by other courts.

[2] Maryland Casualty concedes that the wrongful death claim brought by the personal representative of the estate of Alan R. Mallory is not barred by the statute of limitations. (Doc. 59 at 13).

The twenty-nine plaintiffs named in the complaint are all represented by the same attorneys. Plaintiffs' counsel concedes that Maryland Casualty's motion is well taken as to Plaintiffs Randy J. Carlson and George P. Williams. Plaintiffs' counsel also concedes that Maryland Casualty's motion is well taken as to the survival claims brought by personal representatives on behalf of the estates of Richard G. Davidson, Donald A. Johnson and Eddie E. Eggers, but opposes the motion as to their wrongful death claims and as to all claims raised by the remaining plaintiffs.[3] (Doc. 55 at 5).

## PROCEDURAL BACKGROUND

Twenty-four of the plaintiffs in this case were employed by W.R. Grace (Grace) in Libby, Montana. Five of the plaintiffs are "non-worker spouses or children of Grace workers who were [allegedly] exposed to asbestos carried home on Grace workers' clothing." (Doc. 55 at 5). Maryland Casualty was "Grace's primary general liability insurer and workers' compensation carrier from 1962 to 1973." (Doc. 46 at 6).

---

[3] The Court will refer to the individuals who suffer or suffered from asbestosis as plaintiffs and by last name, rather than referencing the personal representatives bringing the survival or wrongful death claims.

Grace filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware (Delaware Bankruptcy Court) on April 2, 2001. *Watson v. BNSF Ry. Co.,* 405 P.3d 634, ¶ 5 (Mont. 2017). On April 2, 2001, the Delaware Bankruptcy Court granted Grace's request for a temporary restraining order enjoining the prosecution or commencement of certain actions. (Doc. 46-1). On May 3, 2001, the Delaware Bankruptcy Court granted Grace's motion for preliminary injunction staying and enjoining all actions, including cases filed or pending in any court against Maryland Casualty, pending a final judgment in the adversary proceeding in bankruptcy court. (Doc. 46-3)

Plaintiffs Schull, Denning, Fiebelkorn, Mack, Fredenberg, Benoit, and Troyer filed a complaint against Maryland Casualty in the Circuit Court for Baltimore City, Maryland (Baltimore case) on June 6, 2001. Plaintiff Johnson was added to the Baltimore case on July 25, 2001, and Plaintiff LeCount was added on December 13, 2001.[4]

---

[4] This information is drawn from Exhibit 5 to Plaintiffs' Response Brief Opposing Maryland Casualty's Motion to Dismiss, which consists of an electronic record provided by the Circuit Court of Maryland, listing plaintiffs, defendant and filing dates, and contains a disclaimer noting that full case information cannot be made available in the electronic record. (Doc. 55-5). Any party wishing the Court to take judicial notice of court records from other cases in future filings should provide certified copies of the actual documents.

Plaintiffs filed the instant case in the Montana First Judicial District Court, Lewis and Clark County, on November 19, 2001. (Doc. 5 at 15). The only defendant named in Plaintiffs' initial complaint was the State of Montana. (Doc. 6 at 5). Plaintiffs filed an amended complaint adding Maryland Casualty on March 22, 2002. (Doc. 7). There is nothing in the state court record indicating that either the amended complaint or the second amended complaint, which was filed on July 11, 2002, were served on Maryland Casualty. (Doc. 5).

On January 22, 2002, the Delaware Bankruptcy Court modified its "May 3, 2001 Injunction for the express purpose of 'reinstat[ing] the bar against the commencement of new actions against Affiliated Entities.'" *Watson*, 405 P.3d at ¶ 20. In its January 22, 2002, Order, the Bankruptcy Court stated: "Any additional Actions that are filed and served upon Affiliated Entities are, upon completion of service, stayed and enjoined pending a final judgment in this adversary proceeding or further order of this Court;." (46-4 at 5).

The Bankruptcy Court clarified the application of its injunction as to affiliated entities again on June 20, 2002, when it denied a motion made by Carole Gerard. (Doc. 46-5). Gerard sought clarification of the Bankruptcy Court's

injunction to allow her to proceed with a civil suit against Maryland Casualty filed in Baltimore, Maryland. Gerard continued to pursue her civil suit after the Bankruptcy Court denied her motion, resulting in a contempt order being entered against Gerard's counsel. (Doc. 55-4). Gerard was represented by Jon L. Heberling and McGarvey, Heberling, Sullivan & McGarvey, P.C. on May 24, 2004, when the Bankruptcy Court entered its contempt order. (Doc. 55-4 at 2). Shortly after the contempt order was issued, Mr. Heberling, who represented Plaintiffs in the instant case until recently, filed a notice of dismissal without prejudice of their case against Maryland Casualty and a number of other defendants.[5]

The Delaware Bankruptcy Court's injunction was lifted on February 3, 2014. *Watson*, 405 P.3d at ¶ 21. Plaintiffs filed their Seventh Amended Complaint on June 6, 2014. (Doc. 13). The Eighth Amended Complaint was filed on May 8, 2017. (Doc. 14). Maryland Casualty executed an acknowledgment and waiver of service on June 1, 2017, (Doc. 1 at ¶ 7), and removed the case to federal court on June 30, 2017. (Doc. 1).

---

[5] The notice was signed on June 25, 2004, and filed on June 28, 2004. (Doc. 59-1).

**LEGAL STANDARD FOR MOTION TO DISMISS**

When determining a motion to dismiss under Rule 12(b)(6), this Court accepts all factual allegations and reasonable inferences as true and construes them in the light most favorable to the nonmoving party, but does not consider conclusory allegations of law and unwarranted inferences. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)).

Although a court is generally limited to considering the contents of the complaint when deciding a Rule 12(b)(6) motion, "a court may properly look beyond the complaint to matters of public record and doing so does not convert a

Rule 12(b)(6) motion to one for summary judgment." *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986), *abrogated on a different issue by Astoria Fed. Sav. and Loan v. Solimino*, 501 U.S. 104, 107 (1991). The history of this case, which Plaintiffs originally filed in state court against the State of Montana in November of 2001, is unusually complex and involves documents filed in state court, which have been incorporated into this case, and various orders entered by the United States Bankruptcy Court for the District of Delaware. Both parties have cited orders entered by the Delaware Bankruptcy Court and this Court takes judicial notice of those orders in deciding Maryland Casualty's motion to dismiss.

**DISCUSSION**

The Court's analysis of the statute of limitations issues raised by the parties begins with the following basic principles. This Court applies the state law of the forum state when deciding substantive issues in cases, like this, in which its jurisdiction is based on diversity of citizenship. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938). The Court therefore looks to Montana law to determine the statute of limitations and related issues raised by the parties. *Cervantes*, 5 F.3d at 1275.

Montana's general tort limitations period is three years and applies to Plaintiffs' bad faith and negligence claims. Mont. Code Ann. § 27-2-204(1) (2017).[6] In Montana, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Mont. Code Ann. 27-2-102(a) (2017). The statute of limitations for a wrongful death action is also three years in Montana, unless the wrongful death results from homicide. Mont. Code Ann. § 27-2-204(2) (2017). Wrongful death claims accrue at the time of decedent's death. *Carroll v. W.R. Grace & Co.*, 830 P.2d 1253, 1255 (Mont. 1992).

The Montana Supreme Court began using the discovery doctrine to toll the statute of limitations long before the Montana Legislature adopted the discovery doctrine by statute in 1987. *See Wilson v. Brandt*, 406 P.3d 452, ¶¶ 16 - 17 (Mont. 2017) (discussing history of discovery doctrine). "The doctrine was based on equitable considerations of 'giving full scope to the statute of limitations on the one hand and according a reasonable measure of justice to the plaintiff on the

_____

[6] The Court cites to the latest version of the Montana Code, unless an amendment to an earlier version materially affects the Court's reasoning.

other.'" *Id.* at ¶ 16 (quoting *Grey v. Silver Bow Cnty.*, 425 P.2d 819, 821 (Mont. 1967).

The Montana Supreme Court recognizes the doctrine of equitable tolling, which "arrests the running of statutes of limitation while the claimant reasonably and in good faith pursues one of several possible legal remedies." *Sorenson v. Massey-Ferguson, Inc.*, 927 P.2d 1030, 1032 (Mont. 1996). A plaintiff seeking application of the equitable tolling doctrine "must first show a reasonable and good faith pursuit of one of several possible remedies and then demonstrate the [following] three criteria . . . have been satisfied: (1) the defendant was notified timely within the statute of limitations by the filing of the first claim; (2) the defendant's ability to gather evidence for defense of the second claim was not prejudiced; and (3) the plaintiff reasonably and in good faith filed the second claim." *Lozeau v. Geico Indemnity Co.*, 207 P.3d 316, ¶ 14 (Mont. 2009).

Montana law protects injured parties who are prohibited from filing suit by an injunction or court order. When an injunction or court order stays the commencement of an action, the time during which that order is in place "is not part of the time limited for the commencement of the action." Mont . Code. Ann.

27-2-406 (2017).  In other words, the limitation period is tolled while an injunction or court order prohibits a party from filing a civil suit.

In considering issues relating to the statute of limitations in Montana, this Court must keep in mind that the Montana Rules of Civil Procedure allow plaintiffs far more time to serve a filed complaint than the Federal Rules.  A plaintiff has three years to accomplish service of process under Mont. R. Civ. P. 4(t) while a plaintiff in most cases has only 90 days to serve a filed complaint under Fed. R. Civ. P. 4(m).

## APPLICATION & ANALYSIS

### Accrual Dates for Individual Plaintiffs

The Montana Supreme Court considered the accrual date for asbestosis related claims in *Orr v. State,* 106 P.3d 100 (Mont. 2004).  After noting the lack of dispute as to the fact that "asbestosis can take years to manifest," the Court held that plaintiffs' negligence claims against the State accrued when Plaintiffs' asbestosis related diseases manifested. *Id.* at ¶ 72.  The Montana Supreme Court reasoned that the provisions of "Montana's statutory version of the discovery rule" are "instructive on the question of when a Montana cause of action accrues." *Id.*

at ¶ 76. The Court noted that Montana and other states adopted the discovery doctrine "because it fairly allows injured plaintiffs to seek relief for long-dormant injuries caused by tortious conduct that occurred much earlier." *Id.* at ¶ 73. The parties in this case appear to agree that the negligence and bad faith claims accrued when the particular plaintiff making the claim was diagnosed with asbestosis and that the wrongful death claims accrued at death.

The following information is drawn from the second attachment to the Eighth Amended Complaint With More Definite Statement. (Doc. 40-2).

1. Plaintiff Schull's negligence and bad faith claims accrued when he was diagnosed, on August 26, 1998.

2. Plaintiff Denning's negligence and bad claims accrued on July 22, 1998 and his wrongful death claim accrued on June 8, 2004.

3. Plaintiff Fiebelkorn's negligence and bad faith claims accrued when he was diagnosed, on July 28, 1998.

4. Plaintiff Mack's negligence and bad faith claims accrued when he was diagnosed, on July 28, 1998.

5. Plaintiff Fredenberg's negligence and bad faith claims accrued when he was diagnosed, on July 28, 1998.

6. Plaintiff Johnson's negligence and bad faith claims accrued on November 9, 1981 and his wrongful death claim accrued on July 30, 1998.

7. Plaintiff Benoit's negligence and bad faith claims accrued when he was diagnosed, on August 26, 1998. His wrongful death claim accrued on January 18, 2009.

8. Plaintiff Davidson's negligence claim accrued on September 21, 1998, and his wrongful death claim accrued on December 21, 2000.

9. Plaintiff Troyer's negligence and bad faith claims accrued on September 15, 1998, and his wrongful death claim accrued on August 26, 2007.

10. Plaintiff LeCount's negligence and bad faith claims accrued on December 17, 1998.

11. Plaintiff Williams's negligence and bad faith claims accrued when he was diagnosed, on December 29, 1998.

12. Plaintiff Eggers negligence and bad faith claims accrued on January 5, 1999, and his wrongful death claim accrued on August 26, 2006.

13. Plaintiff Carlson's negligence and bad faith claims accrued on January 6, 1999.

14. Plaintiff Day's negligence claim accrued on February 2, 1999.

15. Plaintiff Skramstad's negligence claim accrued on March 10, 1999.

16. Plaintiff Ludwig's negligence and bad faith claims accrued when he was diagnosed, on August 12, 1999.

17. Plaintiff Warner's negligence claim accrued on December 9, 1999.

18. Plaintiff Reich's negligence and bad faith claims accrued on December 29, 1999.

19. Plaintiff Schnackenberg's negligence and bad faith claims accrued on January 25, 2000.

20. Plaintiff Johnson's negligence claim accrued when she was diagnosed, on January 25, 2000.

21. Plaintiff Shavlik's negligence and bad faith claims accrued when he was diagnosed, on March 7, 2000.

22. Plaintiff Bruce C. Baker's negligence and bad faith claims accrued on March 21, 2000, when he was diagnosed. His wrongful death claim accrued on February 4, 2002.

23. Plaintiff Mallory's negligence and bad faith claims accrued on April 6, 2000, and his wrongful death claim accrued on September 1, 2011.

24. Plaintiff Chalmers's negligence and bad faith claims accrued when he was diagnosed, on April 13, 2000. His wrongful death claim accrued on July 6, 2009.

25. Plaintiff Farrar's negligence and bad faith claims accrued when he was diagnosed, on April 26, 2000.

26. Plaintiff Knopp's negligence and bad faith claims accrued when he was diagnosed, on May 18, 2000.

27. Plaintiff Jam's negligence and bad faith claims accrued when he was diagnosed, on May 30, 2000.

28. Plaintiff Wood's negligence and bad faith claims accrued when he was diagnosed, on July 1, 2000.

29. Plaintiff Darryn W. Baker's negligence claim accrued when he was diagnosed, on July 24, 2000.

**Equitable Tolling and Baltimore Filing**

Maryland Casualty argues that the following claims, which accrued before January 22, 1999, should be dismissed because the limitations period ran before the tolling period imposed by the Delaware Bankruptcy Court began on January 22, 2002: 1) Plaintiff Schull's negligence and bad faith claims; 2) Plaintiff Denning's negligence and bad faith claims; 3) Plaintiff Fiebelkorn's negligence and bad faith claims; 4) Plaintiff Mack's negligence and bad faith; 5) Plaintiff Fredenberg's negligence and bad faith; 6) Plaintiff Johnson's negligence, bad faith, and wrongful death claims;[7] 7) Plaintiff Benoit's negligence and bad faith claims; 8) Plaintiff Davidson's negligence claim; 9) Plaintiff Troyer's negligence and bad faith claims; 10) Plaintiff LeCount's negligence and bad faith claims; 11) Plaintiff Williams's negligence and bad faith claims; 12) Plaintiff Eggers's negligence and bad faith claims; and 13) Plaintiff Carlson's negligence and bad faith claims. (Doc. 46 at 15 and n. 7).[8]

---

[7] Plaintiff Johnson admits that his negligence and bad faith claims, which accrued in 1981, are time-barred.

[8] As noted above, Plaintiffs Carlson and Williams concede that Maryland Casualty's motion is well taken and Plaintiffs Davidson and Eggars concede that Maryland Casualty's motion is well-taken as to all but their wrongful death claims.

Plaintiffs Schull, Denning, Fiebelkorn, Mack, Fredenberg, Johnson, Benoit, Troyer and LeCount argue that their claims are not time-barred because they filed their claims against Maryland Casualty in Baltimore within three years of the accrual date for those claims. (Doc. 55 at 14 - 15). In its reply brief, Maryland Casualty argues that the filing of claims in Baltimore has "no impact on the Montana case before this Court" and that "Plaintiffs fail to apply the standard of equitable tolling in Montana." (Doc. 59 at 8).

While it is true that Plaintiffs failed to specifically apply the equitable tolling factors to their claims, they raise equitable tolling by arguing that all their claims (with the exception of those referenced in footnotes 7 and 8 above) were timely filed either in Baltimore or in this action. (Doc. 55 at 25). Plaintiffs also point out that Maryland Casualty had notice of their claims against it "[f]rom at least the date of the March 18, 2002, Bankruptcy Court hearing forward." (Doc. 55 at 26).

Under Montana law, a plaintiff seeking application of the equitable tolling doctrine "must first show a reasonable and good faith pursuit of one of several possible remedies and then" satisfy the following criteria: (1) the defendant was

notified timely within the statute of limitations by the filing of the first claim; (2) the defendant's ability to gather evidence for defense of the second claim was not prejudiced; and (3) the plaintiff reasonably and in good faith filed the second claim." *Lozeau*, 207 P.3d at ¶ 14. Because this issue is being decided at the motion to dismiss stage, the Court reads the complaint and the filings from other cases of which it takes judicial notice liberally and will only grant the motion if it appears that there is no set of facts that would permit each plaintiff to establish equitable tolling. *Cervantes*, 5 F.3d at 1275.

Plaintiffs Schull, Denning, Fiebelkorn, Mack, Fredenberg, Benoit, Troyer and LeCount filed their claims against Maryland Casualty in Baltimore before their limitations period ran in Montana. Plaintiff Johnson timely filed his wrongful death claim against Maryland Casualty in Baltimore before the limitations period ran on that claim. To the extent that filing of the first claim qualifies as notification to the defendant, Plaintiffs have met the first requirement of equitable tolling.

There is no indication that Maryland Casualty's ability to gather evidence in defense of either the Baltimore or Montana claim was prejudiced by the untimely

filing of the Montana claim. Maryland Casualty could not have engaged in discovery during the Grace bankruptcy proceeding because the prosecution and defense of the cases against it were stayed by the Delaware Bankruptcy Court. Plaintiffs have therefore met the second equitable tolling requirement.

While Plaintiffs have not explained their reason for filing a complaint in Montana against Maryland Casualty when their Baltimore complaint was still pending or for waiting to amend their Montana complaint to add Maryland Casualty as a defendant prior to the running of their various limitations periods, there is no indication that they were acting in bad faith. Plaintiffs have therefore met the third equitable tolling requirement.

### Delaware Bankruptcy Court Filings

Maryland Casualty argues that any claim against it was time-barred unless re-filed within sixty days of February 3, 2014, when the bankruptcy stay was lifted, regardless of the time remaining on said limitations period at the time the preliminary injunction was entered. (Doc. 46 at 22). This argument is based on an order entered by the Delaware Bankruptcy Court on June 20, 2002. (Doc. 46-5). In addition to denying the motion filed by an individual who is not a plaintiff in

the instant case, the Delaware Bankruptcy Court expanded its January 22, 2002,

order by stating in its June 20, 2002, order:

> ORDERED that the Preliminary Injunction applies to
> any current or potential plaintiffs who may seek to
> proceed with any and all suits alleging causes of action
> similar to those alleged by the plaintiffs in the Baltimore
> Action or the Montana Action which have been brought
> against or may be brought against Maryland Casualty
> Company and/or Continental Casualty Company or any
> other Insurance Carriers, as defined in the Preliminary
> Injunction, and proceeding with any similar suits without
> first obtaining relief from this Court shall be considered
> a contempt of this Court's Preliminary Injunction; and it
> is further ordered that as to any suit or potential claim
> against any Insurance Carrier that is stayed by this
> Preliminary Injunction and has not yet been been
> commenced in any court, the statute of limitation (or
> other applicable time bar established by statute or order)
> is tolled and shall not expire until the later of either (1)
> its own expiration period or (2) 60 days after this
> Preliminary Injunction (a) expires and is not further
> extended; or (b) is terminated by the Court for all parties
> and claims subject to it; or (3) 60 days after entry of an
> Order as to a particular party who files an appropriate
> motion for relief from this Preliminary Injunction,
> granting said motion.

(Doc. 46-5 at 3).[9]

---

[9] The Court has quoted this portion of the Bankruptcy Court's order in full because the
interpretation offered by Maryland Casualty differs widely from that offered by Plaintiffs.

Plaintiffs correctly point out that the Bankruptcy Court's June 20, 2002, order describes three possible tolling expiration events, the later of which would end the tolling period. (Doc. 55 at 24). Plaintiffs argue that by making the first event "its own expiration period" and adding a 60-day extension of the injunction in the second and third clauses, the Delaware Bankruptcy Court did not intend to shorten any existing statute of limitations but to add the 60 days to the end of any existing statute of limitations. (Doc. 55 at 24 - 25).

This Court agrees with Plaintiffs that the Delaware Bankruptcy Court, like this Court, must defer to the substantive law of the forum state when considering substantive issues, including the statute of limitations. It follows, therefore, that the Bankruptcy Court's 60-day extension was to lengthen the tolling period, rather than shorten the applicable state statute of limitations.

This reasoning is consistent with the Montana Supreme Court's application of Montana's tolling statute (Mont. Code. Ann. 27-2-406) and consideration of some of the orders of the Delaware Bankruptcy Court at issue here. *Watson*, 405 P.3d at ¶¶ 18 - 20. The Montana Supreme Court determined that the running of any limitation period based on harm allegedly caused by W.R. Grace and its

affiliated entities that accrued between the Delaware Bankruptcy Court's imposition of the order on January 22, 2002 and the lifting of the order on February 3, 2014 was tolled. *Id.* at ¶ 21. The Montana Supreme Court also held that the statute of limitations "resumed running" on February 3, 2014, when the "Bankruptcy Court's Preliminary Injunction was lifted." *Id.*

Maryland Casualty, like BNSF, is an entity affiliated with W.R. Grace. This Court therefore follows and expands on the reasoning of the Montana Supreme Court in holding that the statute of limitations was tolled for any plaintiff and any claim that had not expired prior to the Delaware Bankruptcy Court's January 22, 2002, order. Any unexpired statute of limitations resumed running when the injunction was lifted on February 3, 2014.

The Court calculated the limitations period remaining for each plaintiff after the statute of limitations resumed running, since neither Plaintiffs nor Maryland Casualty performed the calculation. For purposes of this calculation, the Court accepts Plaintiffs' argument that the Delaware Bankruptcy Court's June 20, 2002, order added 60 days to the limitations period for any plaintiff whose limitations period expired during those 60 days.

Plaintiff Day had only fourteen days left on his limitations period once the tolling period ended. Plaintiff Skramstad had only twenty days left on her limitations period once the tolling period established by the Delaware Bankruptcy Court ended. The Seventh Amended Complaint was not filed until June 6, 2014, which was over 120 days after the tolling period ended. Day and Skramstad cannot rely on equitable tolling because there is no indication that either filed their claims against Maryland Casualty in any court before the Delaware Bankruptcy Court issued its preliminary injunction. The Court will therefore grant Maryland Casualty's motion as to Plaintiffs Day and Skramstad.

**Dismissal Without Prejudice**

Maryland Casualty argues that "Plaintiffs forfeited any timely-filed claims when they voluntarily dismissed MCC in 2004." (Doc. 46 at 17). Although the unpublished opinion of the Montana Supreme Court cited by Maryland Casualty in support of its argument has no precedential value, a case cited in that opinion is instructive. *See Chapman v. Credit Assocs.,*, 138 Pl3d 426, ¶ 11 (Mont. 2006). In *Beck v. Caterpillar Inc.*, the United States Court of Appeals for the Seventh Circuit held that the plaintiff's statute of limitations was not tolled "during the

pendency" of a "suit that was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)" because that suit was "treated as if it had never been filed." 50 F.3d 405, 407 (7th Cir. 1995).

Unlike the plaintiff in *Beck*, Plaintiffs in the instant case have not relied on the filing of their dismissed complaint to toll their statute of limitations. They rely on the Delaware Bankruptcy Court's preliminary injunction, which was entered before Plaintiffs filed the amended complaint naming Maryland Casualty as a defendant in the instant case. Once Plaintiffs' counsel realized that he could be subject to sanctions for proceeding with Plaintiffs' case against Maryland Casualty, Plaintiffs dismissed their claims without prejudice. In following the Seventh Circuit's holding in *Beck*, the Court treats both the amended complaint, which first added Maryland Casualty as a defendant, and the dismissal of the claims against Maryland Casualty in the instant case, as having never been filed.

Approximately four months after the stay was lifted, Plaintiffs filed the Seventh Amended Complaint. For all but a few of the plaintiffs, that complaint was timely filed because their limitations period had been tolled while the preliminary injunction was in place.

## CONCLUSION & ORDER

For the reasons outlined above, IT IS HEREBY ORDERED that Defendant Maryland Casualty's Motion to Dismiss (Doc. 45) is GRANTED as to the negligence and bad faith claims and DENIED as to the wrongful death claim brought on behalf of Donald A. Johnson and his heirs by his personal representative; GRANTED as to the negligence claim and DENIED as to the wrongful death claim brought on behalf of Richard G. Davidson and his heirs by his personal representative; GRANTED as to Plaintiff George P. Williams; GRANTED as to the negligence and bad faith claims and DENIED as to the wrongful death claim brought on behalf of Eddie E. Eggers and his heirs by his personal representative; GRANTED as to Plaintiff Randy J. Carlson; GRANTED as to Plaintiff Don L. Day; GRANTED as to Plaintiff Norita I. Skramstad and DENIED as to all other plaintiffs.

IT IS FURTHER ORDERED that Defendant shall file its answer within fourteen (14) days of entry of this Order, and that lead counsel for the respective parties shall appear in person before the undersigned on **May 30, 2019 at 9:30 a.m.** in Courtroom II of the United States Courthouse, Helena, Montana to

participate in a preliminary pretrial conference. The conference is intended to develop a case-specific plan for discovery and a schedule for disposition of the case. Counsel should prepare to take part in meaningful discussions of material contained in the pretrial statements. The case management plan resulting from the preliminary pretrial conference is not subject to revision absent compelling reasons.

IT IS FURTHER ORDERED:

1.      If the parties have not already served initial disclosures conforming with Fed. R. Civ. P. 26(a)(1), they must serve their initial disclosures on or before **April 26, 2019.** Initial disclosures shall not be filed.

2.      On or before **May 3, 2019,** lead trial counsel shall confer to consider the matters set forth in Fed. R. Civ. P. 26(f), to discuss possible stipulated facts, and to develop a proposed case management plan. Plaintiff must file the proposed case management plan **on or before May 10, 2019.**

The proposed case management plan shall contain deadlines for the following pretrial motions and events or shall state that such deadlines are not necessary:

Motions to Amend the Pleadings
Motions to Join Parties (including naming John Doe Defendants)
Motions for Judgment on the Pleadings (fully briefed)
Plaintiff's Designation of Expert Witnesses
Defendant's Designation of Expert Witnesses
Completion of Discovery
Motions for Summary Judgment (fully briefed)
Motions in Limine (fully briefed)
Additional Deadlines agreed to by the Parties.

"Fully briefed" means that the motion, the brief in support thereof, and the opposing party's response brief are all filed with the Court by the deadline. Expert disclosures must comply with Fed. R. Civ. P. 26(a)(2)(B) on or before the deadline.

The proposed plan shall also state the parties' views and proposals on all topics listed in Fed. R. Civ. P. 26(f)(3) and identify likely areas of expert testimony.

The parties should bear in mind that, as the case develops, they may agree among themselves to extend discovery. *See* Fed. R. Civ. P. 29. However, the discovery deadline set by the Court will not be continued absent compelling reasons, nor will the Court entertain discovery motions based on post-deadline occurrences.

3.      **On or before May 10, 2019,** Plaintiff shall separately file a Statement of Stipulated Facts to which all parties agree.  *See* L.R. 16(2)(b)(3).

4.      On or before **May 10, 2019 ,** counsel for the respective parties shall each file a preliminary pretrial statement.  *See* Fed. R. Civ. P. 26(a)(1).  The statement of each party shall address all matters listed in L.R. 16.2(b)(1).

5.      Counsel are advised that failure to provide adequate information in the preliminary pretrial statement may be deemed an admission that this is a non-complex case.  Failure to comply with this order or with the local rules may also result in the imposition of sanctions.

Done and dated this 22ⁿᵈ day of March, 2019.


_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE